HENRY MEYERS, Respondent, v. RICHARD R. FIELD et als., Appellants.

1. *Partnership.* — Parties cannot by any agreement as between themselves avoid the consequences of acts which constitute them partners as between themselves or as to third parties.

2. *Practice—Pleading—Equity.*—The distinction between law and equity still exists in our practice, and parties seeking equitable relief must set forth the facts in their pleadings in such a manner as to entitle them to the equitable relief prayed. Where matters of equitable jurisdiction are mixed and blended with matters of legal cognizance in the same count, the defect may be taken advantage of by demurrer, or by motion in arrest. Pleadings should be drawn with reference to these distinctions, though in the form prescribed by the statute.

*Appeal from St. Louis Circuit Court.*

The cause came to an issue on the amended petition and answer. The amended petition is in these words:

"The plaintiff states that the defendants are copartners in business, in the city of St. Louis, under the firm name of Field Bros.; that on or about the month of December, 1858, he entered into an arrangement with defendants, who were then, and have been since, wholesale dealers in drygoods and tailoring stock in the city of St. Louis, by which agreement the plaintiff was to conduct a retail business in ready-made clothing in said city, and said defendants were to supply the raw material for said business out of their stock, at their regular wholesale prices for the same; that is, they were to supply plaintiff with all the goods necessary to carry on said business, so far as the same could be supplied out of their regular stock, at their regular wholesale prices for the same.

Plaintiff was to supply all the other goods necessary to carry on said business himself, and, in consideration that plaintiff should bestow on said retail business his labor, custom, and business qualifications, he was to receive all the net profits arising from the sale of said goods, and resulting from said business, after paying the expenses thereof.

" Plaintiff states that he entered into said agreement with said defendants, and purchased goods therefor from defendants and others, and carried on the said business of manufacturing and selling ready-made clothing at the store-room No. 99 North Third street, in the city of St. Louis, from December, 1858, until said defendants broke up said business by taking possession of said store and stock about January 3, 1860, hereinafter mentioned ; that during that period he obtained from said defendants large quantities of goods, and settled for the same in pursuance of said agreement.

" Plaintiff states that it was understood and agreed that plaintiff should pay over to said defendants the proceeds of said store, from the sales thereof, to the amount of the bills invoiced by said defendants to plaintiff, after paying the ordinary and current expenses of carrying on said business, cost of manufacturing, and other requisite outlays.

" Plaintiff states that he complied with his said agreement on his part, and fairly and honestly carried on said business to the best of his ability. And said plaintiff states that, during the period referred to, he had purchased from other houses than defendants', goods for the use of said business, with the knowledge and consent of said defendants, and such as were not kept for sale in the store of said defendants, and which were necessary for said retail business.

" Plaintiff states that on or about January 1, 1860, the said defendants took possession of store building, stock, evidences of indebtedness, and assets, to the amount of $13,218 73 cts., the particulars and items of which will appear by an account filed with the original petition in this cause, marked ' Exhibit A.' "

Meyers v. Field et als.

| | |
|---|---|
| Amount of stock taken by Field Bros., January 3, 1860, at cost, | $ 9,437 35 |
| Building, - - - - - - - - - - - | 1,500 00 |
| Fixtures of store, - - - - - - - - - | 816 50 |
| Bills receivable, as per annexed schedule, - - - - | 1,464 88 |
| | $13,218 73 |

"And plaintiff further states that said building, mentioned in said exhibit, had been, previously to the time of entering into said arrangement with defendants, purchased by them for the use of plaintiff at the price and sum of fifteen hundred dollars, and that said sum had been by these defendants charged in the account against this plaintiff, and paid by this plaintiff to said defendants and received by them.

"And plaintiff states that by reason of their taking possession of and retaining said building, and of their receiving and retaining the rents and profits of the same, and keeping the possession thereof, he is entitled to be credited on his account with the said sum of $1,500, so paid by him to them for said building.

"Plaintiff states that the total amount for which these defendants were entitled to credit for goods, merchandise, &c., so delivered by them as aforesaid up to the 3d day of January, 1860, was the sum of $11,489.99, the particulars and items of which will appear by an account filed with the original petition in this case, and made an exhibit, marked "B."

STORE 99 NORTH THIRD STREET,

| | To FIELD BROS. | DR. |
|---|---|---|
| Statement, January 23, 1859, - - - - - - - | $7,806 | 12 |
| " July 1, 1859, - - - - - - - - | 5,967 | 81 |
| " January 3, 1860, - - - - - - - - | 4,363 | 43 |
| | $18,137 | 36 |
| CR. By Cash, as per book, - - - - - - - - | 6,667 | 37 |
| Balance, - - | $11,469 | 99 |

"And plaintiff states that the excess of the amount so taken, as per Exhibit A., over the amount for which defendants were entitled to credit, as shown in Exhibit B., to-wit, the sum of one thousand seven hundred and forty-eight dollars and seventy-four cents ($1,748.74), was the property of

this plaintiff, and was partly the profits arising from said business, and which, according to said agreement, properly belonged to this plaintiff. Yet the said defendants, disregarding plaintiff's rights in the premises, and intending and contriving to cheat and defraud the said plaintiff out of his just rights, did on the 3d day of January, 1860, take into their possession, keep and retain, and have ever since kept and retained, said building, stock, evidences of debt, assets, &c., mentioned in Exhibit A., whereby the said defendants became indebted to this plaintiff in the sum of seventeen hundred forty-eight dollars and seventy four cents, which this plaintiff says is justly due and owing to him by said defendants, and have utterly failed and neglected to account to, or pay the same, or any part thereof. Whereupon plaintiff prays judgment, &c."

The defendants answered, the case was referred to a referee, exceptions taken to his report by defendants, which were overruled, judgment entered upon the report, and motion by defendants for a new trial and in arrest, which were overruled, and defendants appealed.

*Krum & Decker*, for appellants.

I. The Supreme Court will examine the proceedings before the referee, and see whether justice has been done between the parties, although no motion for a review was made, nor exceptions saved. (Shore v. Coons, 24 Mo. 556.)

II. The referee committed an error in his construction of the petition. There is no power in the referee to give plaintiff a judgment, or relief which he does not seek. (Perry v. Barret, 18 Mo. 145; 28 Mo. 82.)

III. The petition presents 'more similarity to a bill in equity for the adjustment of mutual accounts than to any other legal proceeding.

a. The equity for an investigation and adjustment of accounts is well established, and forms a distinct branch of chancery jurisdiction. (Adams' Eq. 222 et seq., and cases there cited.)

The only relief which he seeks is for a settlement of accounts, and payment to him of a balance which he claims is due him.

2. That, as an action to recover for a tort, or petition in nature of trespass or trover, the petition is fatally defective. It does not present a cause of action in trespass or trover.

*a.* The petition must state facts sufficient to constitute a cause of action.

The code has only abolished the forms of action; the same principles of pleading which governed before the code, in all other respects, continue to exist. The code nowhere defines what shall constitute a cause of action; the same cause of action still continues. (6 How. Pr. 229; 19 Barb. 560; 27 Barb. 310; Nash's Ohio Code, p. 45; Chit. Pl. 215.)

Our own Supreme Court have adopted these views, as will be seen by an examination of the cases—Mooney v. Kennett, 19 Mo. 551, &c.

*Glover & Shepley*, for respondent.

I. The allegations in the petition were sufficient, under the code, to maintain trover. No technical description of wrongs is now required. (R. C. 1855.) The allegations in petition are good at common law; the mode of taking is immaterial; the fraudulent keeping is the gist of the action. (2 Wheat. Selwyn, p. 1400.)

II. The exceptions were all grounded on some misconception of facts.

*a.* The plaintiff did own the stock of goods. He was, by contract with the defendants, to make them up and sell them, and was to pay defendants out of the proceeds, and as fast as realized, which he did. Under these circumstances, he was not only owner of the stock, but absolutely entitled to the possession of them.

*b.* No demand for the goods was necessary. Even if demand was necessary, it only affected the costs. (R. C. 1855, § 34, p. 448.)

HOLMES, Judge, delivered the opinion of the court.

The petition in this case appears to have been drawn in utter disregard of the rules of pleading, either at law or in equity. It is neither a good bill in equity, nor a good cause of action at law. The transactions disclosed by the facts stated in it would seem to amount to a partnership in a joint adventure, upon which, if the petition were properly framed, it is probable that the plaintiff would be entitled to equitable relief, as upon the dissolution of a partnership, and for an account to be taken, and stated for the purpose of ascertaining the balance of account which might be found to be due the plaintiff as a partner. The arrangement seems to have been one of those not uncommon attempts on the part of the parties concerned, either designedly, or in ignorance of the law, to make agreements and arrangements among themselves for conducting any business, in contravention of the rules of law, whereby they seek to avoid the name, duties, liabilities and responsibilities of partners *inter sese*, or as to third persons, while entering into agreements and transactions which, by the law of the land, constitute them partners, whatever they may please to say or think about it, or by whatever name they may choose to call it. It would appear that the defendants were to furnish a large part of the capital stock in trade, and that the plaintiff was to put in his personal services and skill, as well as to furnish a part of the capital stock; that his work as a manufacturer was to be mixed with the raw material supplied by the defendant or himself; that for the supplies of goods which he should receive from the store of the defendants' separate firm, they were to be allowed in settlement their own wholesale prices, whereby their share in the profits in the joint business would be ascertained and limited ; that the plaintiff was to receive, in full compensation for his services, skill, and attention to the business, all the profits which might be realized on the sale of the manufactured articles over and above the costs and expenses, the capital invested, and that portion of the profits which would go the defendants in the shape of their

wholesale prices, whereby all the losses, if any could happen under such an arrangement and course of business, would be thrown on the plaintiff, in diminution of his share of the profits; that real estate was leased or purchased for the use of the business, and expenses incurred on the joint account, with the knowledge and consent of the defendants; that balances were settled from time to time on this basis, and that at the close of business a balance of account on the whole transaction still remained unsettled; and that the defendants, in violation of the rights of the plaintiff, as he claims, suddenly put a stop to the business by stepping in and assuming to themselves the entire possession and exclusive control of the whole concern. In such case there is such a community of interest in the capital stock, or in the profits and losses, or in both, as will make the transaction a partnership (Sto. Part. §§ 23, 27); and the proceedings in this case sufficiently show that any fair adjustment of the rights of the parties must require the interposition of a court of equity, and would constitute a proper subject of equitable jurisdiction in the settlement of partnership accounts, and that no adequate and complete remedy can be had in the strict course of legal proceeding.

The petition is not framed upon such a case, though some of the facts are stated. It does not ask for any equitable relief. It does not distinctly allege that there was a partnership; nor does it pray for a dissolution to be decreed, nor for an account to be taken and stated, nor for judgment for the balance of account that may be ascertained to be due the plaintiff. It contemplates legal relief only. The plaintiff assumes to state his account for himself, and asks judgment for a specified sum as upon an indebtedness due him at law.

The respondent presents his case here as an action of trover, and so the referee seems to have considered it in his proceedings and report. It was plainly not a proper case for action in the nature of trover. The petition is not so framed. Where matters of equitable jurisdiction are mixed and blend-.

ed with matters of legal cognizance in the same count, the court will not undertake narrowly to sift the petition in order to see if the essential elements of a cause of action at law can, by any construction, be made out and separated from the rest. Such a petition may very well be held to be demurrable for that reason alone, as not containing a cause of action stated with that degree of certainty which the law requires. Where two or more good causes of action are clearly stated in the same count, it has been held that the irregularity in pleading was not one of the enumerated causes of demurrer, and that the proper course would be a motion to the court to compel the plaintiff to elect on which cause of action he would proceed. (Mooney v. Kennett, 19 Mo. 551.) If no good cause of action be distinctly stated, the objection is not waived by failure to demur, (Ivory v. Carlin, 30 Mo. 142,) but may be taken on motion in arrest, or writ of error.

The distinction between law and equity has not been abolished by the new code of practice. Equitable rights are still to be determined according to the doctrines of equity jurisprudence, and in the peculiar modes of proceeding which are sometimes required in such cases; and legal rights are to be ascertained and adjudged upon the principles of law, and the rules of proceeding at law are in many respects very different from those which are applicable to equity cases. Pleadings should be drawn with reference to these distinctions, though in the forms prescribed by the statute. Where the petition is framed for legal redress, the plaintiff cannot be allowed to prove equitable rights, though the facts be stated to some extent in his petition. If he seeks equitable relief, the facts must be stated in such manner as to show that he is entitled to the relief prayed for, as under the former practice; and if he claim redress at law, the essential elements of his cause of action must be stated with such clearness and certainty as to be intelligible to professional, if not to ordinary, comprehension. (Richardson v. Means, 22 Mo. 87; Maguire v. Vice, 20 Mo. 427; Hesse v. Mo. State Mut. F. Ins. Co., 21 Mo. 93.)

. The statute requires that the petition shall contain, not only a plain statement of the facts constituting the cause of action, but also a demand of the relief to which the plaintiff may suppose himself entitled; and if a recovery of money be demanded, the amount thereof, or such facts as will enable the defendant and the court to ascertain the amount, must be stated. These provisions evidently contemplate that the relief demanded may be either such as may be granted in equity, or such as may be given at law, according to the nature of the case stated in the petition. (R. C. 1855, p. 1229, § 3.) The provisions of the statute concerning the trial by the court or jury recognize the same distinction of cases at law, or in equity. (Art. X., §§ 11–18.) Any issue of fact in the action may be referred to a referee upon the written consent of the parties; but where the parties do not consent, the court can order a reference only in certain specified cases; and these are such as fall within the jurisdiction of courts of equity, and in which the constitutional right of trial by jury cannot be demanded.

In this case the court ordered a reference without the written consent of the parties, thereby treating it as a case of equitable jurisdiction; but the referee appears to have proceeded as if it had been an action at law. There was no trial by jury. A prayer for relief was an essential part of a bill in equity, and a demand for relief in accordance with the facts stated in the petition is now an essential part of the petition.

It is deemed unnecessary to review in detail the exceptions to the report of the referee. In the review we have taken of the case, the proceedings were erroneous from the beginning. We hold that the petition was demurrable; that the defect was not waived by the failure to demur, and that the motion in arrest should have been sustained.

The judgment is reversed and the cause remanded, with leave to the plaintiff to amend his petition. The other judges concur.