EUGENE MILTENBERGER, Plaintiff in Error, v. PATIENCE C. MORRISON, PETER WONDERLY, SARAH WONDERLY, HIS WIFE, AND ALEX. J. P. GARESCHÉ, HER TRUSTEE, Defendants in Error.

1. *Statute of Frauds — Equity — Lands.*—A parol agreement between A. and B., that A. shall purchase the land of B. at a sale under an encumbrance, and allow B. the subsequent privilege of redeeming or buying the land, is an agreement within the statute of frauds, and will not be enforced in a court of equity.

2. *Sales at Auction—Fraud—Equity—Evidence.*—Where a fraudulent combination and secret arrangement is made among bidders and parties to obtain at a reduced price the land of a party sold under a mortgage or deed of trust, a court of equity will set aside the sale and order a re-sale upon the application of parties entitled to the relief. A creditor who has attached the interest of the debtor prior to the sale, and subsequently purchased the debtor's equity of redemption under the judgment, may bring suit to set aside the sale, on the ground of fraudulent combination to suppress bidding and prevent competition. Such fraud may be proved by parol evidence.

3. *Practice — Pleading — Judgment — Relief.*—Where the facts are sufficiently stated in the petition, the plaintiff may have such judgment as the facts stated entitle him, although in the prayer of the petition he ask for a different relief ; but if the facts be not stated, he cannot have the relief upon the facts proved at the trial.

4. *Witness — Party in Interest.* — To exclude a witness on the ground that he is a party in interest, it must appear that he has such an interest as the law will recognize and protect.

### Error to St. Louis Land Court.

Miltenberger was a judgment creditor of Wonderly, and had procured a sheriff's deed in an attachment suit against him for the land respecting which this controversy arose, which was composed of lots 15 and 16 in block 896 of Lucas & Hunt's addition to the city of St. Louis. These lots were

each improved, and in the year 1860–61 yielded respectively the rent of $900 and $800 per annum. · The lots were encumbered at that time by deeds of trust in favor of Lucas & Hunt for about $1300 each, becoming due in 1861 & 1862; they were also encumbered by another deed in favor of one Lewis for two notes each for $1,000, due December, 1860, and December, 1861, respectively. Wonderly conveyed lot 16, with the house thereon, to P. C. Morrison, and conveyed the other lot to trustees for his wife, he being insolvent. The encumbrances remained unpaid, and plaintiff commenced suit by attachment against Wonderly. It was alleged that Wonderly and Morrison agreed that Morrison should buy up the outstanding notes, purchase the said houses and lots at a sale to be made under the deeds securing the debts, and hold lot No. 16 for her own use and lot 15 for the use of Wonderly, he repaying to her the debts and interest thereon which she should so purchase; that, accordingly, said Morrison purchased said debts, and she and Wonderly colluding caused a sale to be made under the deeds of trust, at which she became the purchaser, paying the sum of $50 for lot 15 and $150 for lot 16. This sale was made on June 1, 1861. The plaintiff claimed that he, as attaching creditor of Wonderly and purchaser of his interest in this lot No. 15, was entitled to redeem the same from Mrs. Morrison. It was claimed that the rents and profits of the property had nearly or quite extinguished the sum for which Morrison held it.

Morrison denied that any such agreement was made with Wonderly, and denied collusion with Wonderly to purchase the property (lot 15) for him, at a low rate, for the purpose of defrauding his creditors. Wonderly, who was made defendant, confessed the bill.

At the trial, the record of the attachment suit against Wonderly in favor of E. Miltenberger & Co., and the deed of the sheriff to him for lot 15, were put in evidence; also, the deeds of trust above mentioned, and the sale, under the deed to Lewis' trustee, of the lots on 1st June, 1861. It was also shown that Morrison, on January 24, 1862, at a sale

made by Lucas' trustee, became the purchaser of the same lots over again, paying for the lot No. 16, $105, and for lot No. 26, $2,550, and received the trustee's deed therefor.

Evidence was given tending to prove that the agreement stated in the petition had really been made between Morrison and Wonderly, and that the purchase of the lots by her as stated had taken place in conformity with it.

The plaintiff called as a witness Peter Wonderly, to whose admission to testify the defendant Morrison objected, on the ground that he was a party to the suit. The court sustained the objection.

The court made a decree for defendants, dismissing the bill of plaintiff.

*Gantt* and *Holliday*, for plaintiff in error.

I. The rejection of Wonderly as a witness was error. As a party defendant, he was a competent witness at the instance of plaintiff.

II. But, independent of the testimony of Wonderly, it is clear by the evidence that such a contract as was set up in the petition was made between Morrison and Wonderly, and that the lot 15 was purchased by her for the use of Wonderly, he being subject to the condition of redeeming it by paying off all the outlay to which she was put on account of it, and ten per cent. interest. If this be established, it results that the only remaining question is whether this constituted Wonderly the owner of a valuable interest in the lot on which his creditor was entitled to seize ; and on this point plaintiff in error submits—

III. That such an agreement between Wonderly and Morrison constitutes her trustee for Wonderly for the excess of the value of this lot over the money paid by Mrs. Morrison on account of the encumbrances thereon.

This proposition is established by numerous authorities. If a party enters into an agreement for the purpose of preventing free competition at a sale by sheriff or trustee, and himself becomes the purchaser at such sale, he is merely a

trustee for those of the creditors who are entitled to call the sale in question; that is, who have assailed the fraudulent arrangement and acquired a title which only requires the removal of the obstacle created by that arrangement—Jones v. Caswell, 3 Johns. Cas. 29; Doolen v. Ward, 6 Johns. 194; Wilbur v. How, 8 Johns. 444; 25 Me. 414; Gardner v. Morse, 25 Me. 140; Thompson v. Davies, 13 Johns. 113; Burbane v. Adams, 4 Comst. (N. Y.) 129; Hawley v. Cranmer, 4 Cow. 717; Hamilton v. Hamilton, 2 Rich. Eq. 355; Boxwell v. Christie, Cowp. 395; 5 D. & E. (Term R.) 642.

These cases establish the illegality of such an arrangement as Mrs. Morrison made; but by means of such arrangement she became the purchaser of the property at an undue valuation; by means of this arrangement other bidders were deterred or dissuaded from competing with her.

*Lackland, Cline & Jamison,* for defendants in error.

I. The evidence of Peter Wonderly was properly rejected. It was shown by the evidence that the suit was prosecuted for his immediate benefit, and he was also incompetent as a witness from the fact that his wife was a party to the suit; hence he could not be a witness either for or against her— R. C. 1855, p. 1577, § 6, subdiv. 1 & 5.

II. Whatever interest Wonderly had in the property in question at the time plaintiff instituted his suit by attachment against Wonderly became extinguished by the sales under the deeds of trust to Mrs. Morrison; so that if the plaintiff is subrogated to any rights of Wonderly in reference to this property, it can be to such only as Wonderly acquired by virtue of the agreement with Mrs. Morrison which was made subsequent to the plaintiff's attachment—Crocker v. Pierce, 31 Me. 183.

III. And if there was any binding agreement between Mrs. Morrison and Wonderly, it constituted a privilege of repurchase and not a mortgage. There was in the transaction nothing upon which a court of equity can fasten, so as to be enabled to call that a mortgage which if anything is in terms

apparently a contract for re-purchase—1 Hill. Mort. 64, 69; Goodman v. Grierson, 2 Hall & B. 279.

IV. If, then, the transaction between Morrison and Wonderly constituted a conditional sale and not a mortgage, then the interest of Wonderly was not one to which plaintiff could be substituted by virtue of the levy under the execution. It was a mere chose in action, and not an interest in land subject to levy on execution—Brant v. Robertson, 16 Mo. 149; Van Ness v. Hyatt, 13 Pet. 300-1.

V. Mrs. Morrison derived her title to the property in question from the trustees in the deed of trust at a public sale at auction, which had been duly advertised and all the world invited to become competitors at the sale, and so that the plaintiff could have saved the property to abide the result of his attachment suit had he desired to do so ; and courts will hold purchasers at such sales to be trustees for other parties only in cases of absolute fraud, or of clearly defined specific agreements—Kennedy v. Keating, 34 Mo. 25; Chospenning's Appeal, 32 Pa. 315 ; Prevost v. Gratz, Pet. C. C. 364, 378 ; Fisk v. Sarber, 6 W. & S. 18 ; Sheldon v. Johnson, 13 Johns. 220 ; Jackson v. Woolsy, 11 Johns. 446.

VI. So far as the transaction and talk between those acting in behalf of Wonderly and Morrison proves any agreement, it seems to be simply that Mrs. Morrison through her agent was to purchase the property at the sale for the protection of her own interest ; and all interest thereafter which Wonderly was to have in the property was to depend solely on the generosity or kind feeling of Mrs. Morrison. Such contracts, in the absence of fraud, equity will never lend its aid to enforce—Ld. Walpole v. Oxford, 3 Vesey, 420-1; Bro. Stat. Frauds, § 429 ; Montacute v. Maxwell, 1 P. Wms. 619.

VII. The evidence of the alleged contract or agreement in this case is at the best uncertain, contradictory, and variant from the allegations of the petition ; and a court of equity will not lend its aid for the specific performance of such a contract, especially if they be within the statute of frauds— 2 Sto. Eq. §§ 751, 764, 767, 769 ; Chainley v. Hansbury, 13

Pct. 21; German v. Machin, 6 Paige, 292; Colson v. Thompson, 2 Wheat. 341; Lord Walpole v. Oxford, 3 Vesey, 420; Rankin v. Simpson, 19 Pa. 474; Goodwin v. Lyon, 4 Porter, 305–6.

VIII. The plaintiff is further precluded from recovering in this case, as the contract or agreement under which he claims is clearly within the statute of frauds; and this is a defence that the defendant can make under a general denial of the agreement at any stage of the action—2 Sto. Eq. § 764; Walker v. Locke, 5 Cush. 90; Boyd v. Stone, 11 Mass. 341; R. C. 1855, p. 807, § 3 & 5; Bro. Stat. Frauds, § 511; Gardner v. Armstrong, 31 Mo. 539; Wildbahn v. Robidoux, 11 Mo. 660.

HOLMES, Judge, delivered the opinion of the court.

The petition is framed with a view to equitable relief. It is founded upon a parol agreement affecting the title to real estate. The purport of the agreement, as alleged, was that the defendant Morrison, if she should become the purchaser of the two lots and houses in question at the sales under the deeds of trust which she held against the property, would hold one of the lots and houses as a trustee, or a mortgagee, for the benefit of Peter Wonderly, the grantor in the deeds of trust, with the understanding that he should have time to redeem that lot and house, by reimbursing to her the full amount of the debt and expenses, after deducting the rents and profits arising from the property while it should remain in her possession. It was stated also in the petition, that, after said agreement was made, Wonderly used no efforts or means to cause purchasers to attend the sale and bid on the property, and make it sell for something near its value, and that responsible bidders were present who were deterred from bidding, out of friendship for said Wonderly, upon learning that the defendant Morrison was buying the property for his benefit, and that the property was bought by her under that agreement.

The suit is brought by an attaching creditor of Wonderly

(the grantor in the deed of trust), who had become the purchaser of the lot and house in question under the judgment and execution obtained in his attachment suit; the attachment was levied upon this property after the dates of the deeds of trust, but before the sales in virtue thereof had been made; and his prayer for relief is, that the said Morrison may be required to render a statement of the amount due her, and that, upon the payment thereof into court for her use, the title to said lot and house may be vested in the plaintiff, and for such other and further relief in the premises as to the court may seem proper.

It is apparent that this petition was framed with a view to relief founded upon the agreement only. It does not look for relief on the ground of any secret arrangement and combination between the parties, or others, for the purpose of preventing the attendance of bidders or deterring bidders at the sale, or of stifling competition among bidders, as a means whereby the purchaser was to be enabled to get the property at a reduced price. It makes no distinct averment of any such arrangement or combination, and it was evidently not intended to be framed with this aspect. There are some statements in it from which it might be gathered indistinctly that this agreement had had some effect to prevent competition at the sale, and some part of the evidence would seem to indicate pretty strongly that such had been the operation of it. But the evidence, on the whole, would seem to have been directed to the matter of the parol agreement, and to have been offered for the purpose of showing that the plaintiff was entitled to the relief for which he prayed. These vague statements concerning fraud in preventing competition at the sale, in view of the main object of the petition and of the relief sought, must be regarded here as mere surplusage.

In reference to the parol agreement as a ground for relief, it was conceded that it came within the statute of frauds, and could not be enforced in a court of equity. An agreement of this kind must be in writing—Walker v. Locke, 5

Cush. 90 ; Montacute v. Maxwell, 1 P. Williams, 618 ; Wild-bahn v. Robidoux,.11 Mo. 659.

With regard to the other matter, there is no doubt that a sale of this kind may be set aside and avoided, as between the parties, and a resale of the property ordered, in a proper case, on the ground of a secret arrangement and fraudulent combination among bidders and parties for the purpose of enabling the purchaser to obtain the property at a reduced price.

. Such arrangements are held to render the sale fraudulent and void, as a fraud upon the rights of the vendor and as against public policy—Wooton v. Hinkle, 20 Mo. 290 ; Neal v. Stone, 20 Mo. 294 ; Hamilton v. Hamilton, 2 Rich. Eq. 355–79 ; Phippen v. Stickney, 3 Met. 384 ; Stine v. Wilkson, 10 Mo. 75.  This petition is not framed with a view to such relief, nor is there any prayer for relief of this nature.  It may be that in a case where the facts were sufficiently stated in the petition to show that the plaintiff was entitled to such relief, it might be granted under the general prayer, though not specifically prayed for.  The petition must contain a plain statement of facts constituting a cause of action, and a demand for relief in accordance with the facts stated in the petition is an essential part of the petition—R. C. 1855, p. 1229, § 3 ;  Meyers v. Field, 37 Mo. 434.

The plaintiff here, by virtue of his attachment and sheriff's deed, acquired the equity of redemption of the grantor in those deeds of trust, and if the property had brought more at the sales under the deeds of trust than was sufficient to pay the debts secured, the surplus of proceeds in the hands of the trustees would have been subject to the equitable title and lien acquired by the plaintiff under his deed ; and they would go to him as the legal representative of the grantor in the deeds of trust.  'This would, we think, give him a standing in a court of equity as a party affected by the sales under the deeds of trust ; and he is therefore in a position to call in question the validity of those sales, on the ground of fraudulent arrangements and combinations to suppress bid-

ding and stifle competition at the sales. Nor do we think that the judgment in this case would be a bar to another petition framed with a view to relief on that ground. But this petition does not place matter of fraud in the sales before us here, in such manner as to call for any discussion of the evidence offered as bearing upon this subject.

Exception was taken to the exclusion of the testimony of Peter Wonderly, on the ground that he was a party for whose immediate benefit this suit was prosecuted. This objection was founded upon evidence tending to show that he had made a parol agreement with the plaintiff to the effect that if the plaintiff recovered in this suit, he was to hold the property for the benefit of Wonderly, and was to convey the same to him upon being paid the full amount of his own debt and expenses; that is to say, there was a verbal agreement that he might purchase the property at a price to be fixed in that manner. It is clear that such an agreement as this must be held void as against the statute of frauds, and that it could not be enforced in a court of equity. He trusts merely to the honor and generosity of the other party, and on that he would have to rely. We do not think this agreement could make him in any way a party for whose immediate benefit the suit was prosecuted.

There was no good ground in this for excluding him as a witness. But he was called as a witness, as appears by the record, merely for the purpose of proving the parol agreement relating to the purchase of this property by the defendant Morrison, and nothing more; and for this purpose his testimony was clearly not admissible, for the reason that such an agreement could not be proved by parol evidence. There was no error, therefore, in excluding his testimony. A fraudulent combination to stifle competition among bidders at a sale may be proved by parol evidence. For such purpose we think his testimony would be admissible.

We find no error in the record for which the judgment can be reversed.

Judgment affirmed. The other judges concur.