EUGENE MILTENBERGER, Plaintiff in Error, *v.* PATIENCE C. MORRISON, Defendant in Error.

1. *Deed of trust notes — Sale — Purchaser.*—Deed of trust notes may be bought up, and the purchaser may sell out and buy in the property conveyed in trust for their security.

*Error to St. Louis Circuit Court.*

*T. T. Gantt*, for plaintiff in error.

*Cline, Jamison & Day*, for defendant in error.

CURRIER, Judge, delivered the opinion of the court.

The pleadings in this case differs from the pleadings in Miltenberger v. Morrison, 39 Mo. 71, in this: that the petition in the present suit contains an additional averment to the effect that the defendant fraudulently combined with the plaintiff's debtor, Wonderly, to prevent competition and to suppress bidding at a public sale of the property in controversy, whereby, as it is alleged, the rights of the plaintiff were prejudiced, and the defendant was enabled to acquire the property at a reduced and inadequate price. That is the gist of the present complaint. The general facts of the case are substantially the same as in the former suit, and do not require to be re-stated here. Wonderly, as the case shows, was the owner of lots 15 and 16 in block 896 of the city of St. Louis, and encumbered them with two deeds of trust to secure the payment of notes amounting to some $4,500. In June, 1860, the deeds of trust still remaining on the property, he sold to the defendant, Mrs. Morrison, lot 16, and conveyed it, with the house thereon, by deed of warranty. His affairs becoming embarrassed, Mrs. Morrison became uneasy about the title to the property she had purchased of him, and for which she had paid him in full.

With a view to her own protection, and in order to throw the whole weight of the encumbrance upon lot 15 alone, she bought up the deed of trust notes, and at a sale under the deed of trust purchased both lots at a sum less than the aggregate of the

encumbrances. In the meanwhile the plaintiff had obtained a judgment against Wonderly for some $800, in an attachment suit, and levied upon and sold out his (Wonderly's) equity of redemption in lot 15. The plaintiff purchased the equity at the sheriff's sale, and thus acquired the right to any surplus that might remain after satisfying the deed of trust encumbering the property. No surplus was produced by the sale under the deed of trust, as already stated, and the complaint is that Mrs. Morrison, in fraudulent combination with Wonderly, prevented competition at that sale, and stifled the bidding.

In my opinion the evidence does not sustain the complaint. It was Mrs. Morrison's right, if she chose to exercise it, to buy up the deed of trust notes, and to sell out and buy in the property which had been conveyed in trust for their security. She did so, and the controlling motive of her action in that behalf, as the evidence clearly shows, was to protect herself against the encumbrance on lot 16, which she had purchased and paid for. She was friendly to Wonderly, but there is nothing to show that the idea of joining him in a scheme to cheat and defraud his creditors was ever present to her mind. Her anxiety was to get her lot relieved from the encumbrance Wonderly had placed upon it. She does not appear to have relied on him in the direction of the business, but employed other parties to look into the matter, and do whatever might be legal and requisite for her individual security and protection. Apparently not familiar with such affairs herself, she intrusted her interest to the sole supervision and direction of her agent, Mr. Brown, and her attorney, Mr. Hitchcock. Brown did but little more than employ Hitchcock, whose mind thenceforward became the directing agency in the transaction in question.

Early in 1861, and prior to the trustees' sales, Brown and Hitchcock, representing Mrs. Morrison, had an interview with Wonderly and his attorneys. Wonderly wished to save lot 15 for himself or family, and Mrs. Morrison wished to get rid of the encumbrance on lot 16. At this conference the understanding was reached that Mrs. Morrison would purchase the notes secured by the trust deeds, and sell the property under the deeds, as she

subsequently did. It seems also to have been further understood that in case she should become the purchaser of the two lots at the contemplated sales, she would be willing to convey lot 15 to Wonderly, or to such person as he might appoint, on being reimbursed her advances and expenditures, her only object being to protect her interest in lot 16. In regard to a redemption of lot 15 by Wonderly, Mr. Hitchcock testified: "I stated my information to be that Mrs. Morrison was kindly disposed toward Wonderly, and I thought it very likely after she got the title she would deal very kindly with him; but I declined to make any promise or agreement to that effect whatever," further testifying that "no contract, agreement, or promise" that Wonderly might redeem was made to his knowledge. Mr. Burnes does not specifically contradict this, but states what he "understood" to be the "effect" of what was said and done at that interview. The result of the extended testimony on this point is, that while Mrs. Morrison's agents refused to commit her to any express agreement to convey on the conditions named, still Wonderly and his attorneys left the conference with a confident belief that she would do so, and that Mrs. Morrison's attorney entertained the same opinion.

Nothing was said at the conference, or at any time, so far as appears, respecting the mode and manner of conducting the anticipated sales; nothing suggestive of a purpose to avert competition. In June, 1862, Mr. Morrison having purchased the notes, lot 15 was sold under the deeds of trust, and bought in by her agent. There had been prior sales of both lots, but the chief controversy gathers about this point. Her advances at this time, with the accumulating interest and expenses, exceeded $5,000. The salable value of the property was then greatly depressed, and the testimony tends to show that $5,000 or $6,000 was as much as the property, lot 15, would command at that time at a deed of trust sale, under ordinary circumstances.

Wonderly's attorney, Mr. Burnes, was present with his client at the sale, and bid on the property against Mr. Hitchcock, who was present as Mrs. Morrison's attorney, bidding in her behalf. Mr. Burnes testifies that in the progress of the competition, Mr.

Hitchcock inquired of him why he was bidding, and that Hitchcock seemed surprised and displeased on account of it. Burnes also testifies that he inferred this from Hitchcock's tone and manner, and therefore ceased to bid. Hitchcock testifies that he has no recollection of any such occurrence as taking place during the sale, but he thinks that he made the inquiry referred to after the sale, and as he and Mr. Burnes were leaving the place in company; that he was led to make the inquiry because Mr. Burnes had previously refused to take the property and pay cash for it, and the sale was for cash; that it would have been "most satisfactory" if Mr. Burnes would have taken the property for the amount of debts against it; that to have discouraged him from doing so would have been "contrary to the theory on which he had managed the whole matter," and that he had "no object in doing anything of the kind." The whole current of the testimony shows that Mrs. Morrison's anxiety at the time was to get back the money she had expended in protecting her title to lot 16. Hitchcock went to the sale prepared to bid that amount and no more. Whether the inquiry in regard to the reason of Mr. Burnes' bidding occurred at or after the sale, the evidence makes it clear that he misinterpreted the purpose of it.

Aside from this matter and the acts of Wonderly, for which Mrs. Morrison was not responsible, there is nothing to show that the sale was in any respect unfairly conducted. As has already been observed, the allegation that it was so is not sustained by the proofs. The proof shows with much greater clearness that Miltenberger is but a nominal plaintiff, with no actual interest in the result of the litigation, and that this suit is being prosecuted in the interest of Wonderly, one of the parties to the alleged fraud.

With the concurrence of the other judges, the judgment will be affirmed.